**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

| | |
|---|---|
| In re:  Joan A. Topalian | BK No: 97-14900 |
| Debtor | Chapter 7 |

---

| | |
|---|---|
| Joan A. Topalian, | |
| Plaintiff | |
| v. | A.P. No. 16-01030 |
| Bank of America, N.A., | |
| Defendant | |

---

### DECISION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT
(this relates to Doc. ## 83, 84, 85, 87, 88)

Plaintiff-Debtor Joan A. Topalian filed this adversary proceeding over 20 years after she was granted a discharge and her chapter 7 case was closed, alleging that defendant Bank of America, N.A. ("BANA") violated the bankruptcy discharge injunction. *See* Amended Complaint (Doc. #25). BANA filed a motion for summary judgment on April 6, 2018 ("BANA's Motion," Doc. #83), to which Ms. Topalian has not filed an objection. In turn, Ms. Topalian filed her own motion for summary judgment on April 19, 2018 ("Ms. Topalian's Motion," Doc. #87), to which BANA objected ("BANA's Objection," Doc. #88). The gravamen of the dispute involves a transaction that occurred some 12 years ago for which Ms. Topalian now seeks redress against BANA in the amount of twenty million dollars.

After review of the motions, the uncontroverted facts set forth by BANA in its statement of undisputed facts accompanying its motion, the lack of objection to BANA's Motion, and the absence of legal argument or even factual support in Ms. Topalian's Motion, the Court does not believe that oral argument on the motions would be helpful. Thus, the Court has decided the parties' respective motions without a hearing in accordance with Rhode Island Local Bankruptcy

Rule 9013-2(a)(1) and (a)(2)(C), (E). For all of the reasons discussed below, Ms. Topalian is not entitled to summary judgement, and conversely, BANA is entitled to such judgment.

**I.      Jurisdiction**

The Court has jurisdiction over this matter under 11 U.S.C. § 105(a), 28 U.S.C. §§ 157(a) and 1334, and DRI LR Gen 109(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

**II.     Background**

Ms. Topalian filed her bankruptcy petition on November 24, 1997. At that time she scheduled her debt owed to BANA[1] on a MasterCard credit card account ("MasterCard Account"). On February 26, 1998, a discharge entered, discharging Ms. Topalian from all of her debts listed on her bankruptcy schedules, including her debt to BANA on the MasterCard Account. Shortly thereafter her case was closed.

In September 2016, Ms. Topalian, acting pro se, filed a motion to reopen her bankruptcy case in order to bring an action against BANA for a "fraudulent act" in 2006 that she alleged was in "violation of the law." *See* Motion to Reopen, BK No. 97-14900 (Doc. #8). The motion was granted and the case was reopened. Throughout this proceeding, Ms. Topalian has continued to represent herself, and in late December 2016 she filed a complaint against BANA commencing this action. *See* Doc. #1.

The original complaint, as well as the Amended Complaint now before the Court, consist of unnumbered, confusing, and rambling paragraphs. Both are devoid of citation to any statutes or regulations for the underpinning of a cause of action against BANA. Because of Ms.

---

[1] The account was originally opened with a BANA predecessor-in-interest. BANA is a wholly-owned subsidiary of Bank of America Corporation and the successor-interest to FIA Card Services, N.A., formerly known as MBNA America Bank, N.A. For purposes of this Decision and Order, the Court will use the nomenclature "BANA".

Topalian's pro se status, the Court expended considerable time and effort to ascertain the potential basis of her cause of action. Additionally, the Court has afforded her the benefit of the doubt during this proceeding and treated most of her requests (usually addressed to the Court in the form of letters), as motions filed in the context of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. BANA responded to the original complaint by filing a motion to dismiss. At the hearing on that motion, it became evident that Ms. Topalian was attempting to assert a cause of action against BANA for violation of the discharge injunction.

The Court provided Ms. Topalian with some guidance at the hearing, and she was given the opportunity to amend the complaint to clarify her cause of action. She filed her Amended Complaint on June 22, 2017. As indicated, the Amended Complaint does not refer to any specific statutory or regulatory basis for the cause of action. However, it is evident from reading it that she takes issue with a transaction undertaken by BANA in 2006 relating to the MasterCard Account which, in essence, she alleges violated the discharge injunction that was imposed upon the entry of her 1998 discharge. For its part, BANA has had ample opportunity to conduct discovery of Ms. Topalian, and indeed appears to have benefitted not only from such discovery, but from its own more in-depth review of its records as required by the Court during the discovery phase of this proceeding.[2]

---

[2] Initially, BANA represented that it did not have notice of Ms. Topalian's 1997 bankruptcy filing until 2015, so it could not have knowingly violated the discharge injunction. *See* BANA's Response to Plaintiff's Discovery Motion (Doc. #76), ¶ 8. Changing course after providing Ms. Topalian with what it asserts is nearly 500 pages of its records, it now defends her claim on the grounds of an inadvertent mistake that it promptly corrected.

**III.   Summary Judgment Standard**

In bankruptcy, summary judgment is governed in the first instance by Federal Rule of Bankruptcy Procedure 7056, which incorporates into bankruptcy practice the standards of Federal Rule of Civil Procedure 56. *Hannon v. ABCD Holdings, LLC (In re Hannon)*, 839 F.3d 63, 69 (1st Cir. 2016) (citing *Desmond v. Varrasso (In re Varrasso)*, 37 F.3d 760, 762 (1st Cir. 1994)). Rule 56(a) provides that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

To avoid summary judgment, the non-movant "must establish the existence of at least one question of fact that is both genuine and material." *In re Varrasso*, 37 F.3d at 762. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**IV.   The Undisputed Facts**

In support of its motion, BANA filed a statement of undisputed facts supported by the affidavit of Tom R. Jordan, an employee and officer of BANA. *See* Statement of Undisputed Material Facts (Doc. # 85). As Ms. Topalian did not file any objection to BANA's Motion, and subsequently filed her own motion for summary judgment unaccompanied by any statement of undisputed facts, the Court deems the facts set forth by BANA to be undisputed for the purposes of these cross-motions. *See* Fed. R. Civ. P. 56(c), (e).

Upon receiving notice of Ms. Topalian's bankruptcy, BANA indicated on its records that the MasterCard Account was closed due to the bankruptcy filing and, in July 1998 after her discharged had been entered, charged-off the account as a loss.

Some six years after her bankruptcy case was closed, Ms. Topalian opened a Visa credit card account with BANA ("Visa Account"). For unexplained reasons, in October 2006 BANA inadvertently misapplied a payment ($161.81) Ms. Topalian made on the Visa Account to her charged-off MasterCard Account ("2006 Transaction"). After she brought this error to its attention, in November 2006 BANA corrected the error, reversed the misapplication of the payment and applied it to the Visa Account. Perhaps because of continued complaints from Ms. Topalian,[3] in 2010 BANA made an interest adjustment on the Visa Account in her favor of $144.86, and another favorable interest adjustment of $444.04 in 2011. Ms. Topalian's last payment on the Visa Account was made in April 2013, and after it no longer received payments on this account, BANA charged-off the Visa Account in June 2013 as a loss. BANA's records reflect that no adjustments are due regarding the past history or the reporting on this account. In July 2013, BANA sold the Visa Account and the underlying credit agreement to Portfolio Recovery Associates, and with such sale, ceased to have any interest or rights in the Visa Account. BANA further explains, "At this time, BANA is not reporting either the Visa Account or the MasterCard Account to the credit reporting agencies." *See* Statement of Undisputed Material Facts ¶ 20.

## V.     The Discharge Injunction and its Violation

To effectuate the goal of providing debtors with a "fresh start," debtors who file for bankruptcy relief under chapter 7 of the Bankruptcy Code are granted a discharge of their

---

[3] *See* Amended Complaint.

5

scheduled debts that arose prior to the filing of the petition so long as no exception exists under Bankruptcy Code § 727(a)(1)-(12).[4] *See* 11 U.S.C. § 727(a) and (b).[5] This general discharge typically enters in a chapter 7 case approximately four months after the case is filed. The effect of the discharge is the imposition of a so-called discharge injunction that enjoins creditors whose debts have been discharged from pursuing a debtor to collect those debts. (A caveat to the chapter 7 discharge is that secured creditors retain their liens against their collateral and have the right to pursue such *in rem* claims against their collateral, notwithstanding a debtor's discharge of personal liability for such secured debts.)

The discharge injunction is contained in § 524(a)(2), which states in relevant part that a discharge:

> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . .

This injunction "embodies the fresh start policy of the Bankruptcy Code, by which honest but unfortunate debtors are relieved of personal liability for their discharged debts." *Lemieux v. America's Servicing Co. (In re Lemieux)*, 520 B.R. 361, 364 (Bankr. D. Mass. 2014). Courts may enforce the discharge injunction through § 105(a). *Canning v. Beneficial Me., Inc. (In re Canning)*, 706 F.3d 64, 69 (1st Cir. 2013). A creditor who violates the discharge injunction may be held in contempt and sanctioned, and damages resulting from such violations may be awarded to the affected debtor. *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14, 17 (1st Cir. 2006).

---

[4] Unless otherwise indicated, the terms "Bankruptcy Code," "Chapter," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub L. No. 109-8, 119 Stat. 37 ("BAPCPA").

[5] Specific debts may also be excepted from the general discharge granted a debtor under the exceptions enumerated in § 523(a).

The debtor bears the burden to prove by clear and convincing evidence that a violation of the discharge injunction has been committed by the creditor. *See Best v. Nationstar Mortg. LLC (In re Best)*, 540 B.R. 1, 9 (1st Cir. BAP 2015). To establish a violation, a debtor must prove that the creditor (1) had notice of the debtor's discharge, (2) intended the actions constituting the violation, and (3) acted in a way that "improperly coerce[d] or harasse[d] the debtor." *Id*. (citing *Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 6 (1st Cir. BAP 2009)). "Coercion is assessed under an objective standard, and the issue of whether a creditor acted in an objectively coercive manner is determined on the specific facts of each case." *Bates v. CitiMortgage, Inc. (In re Bates)*, 517 B.R. 395, 398 (Bankr. D.N.H. 2014).

## VI.   The Motions

### A.   Ms. Topalian's Motion

Having provided the relevant background of this proceeding, the Court first addresses Ms. Topalian's request for summary judgment, which literally is just that—a request for entry of a judgment for twenty million dollars against BANA unsupported by any legal argument, affidavit, or documentation. In its entirety it states, "I, Joan Topalian, plead with the United States Bankruptcy Court to give a Summary Judgment in this case, on record; in my favor," and that this proceeding "should be settled without a trial." *See* Ms. Topalian's Motion at 1, 3. Rule 56 requires a party moving for summary judgment to establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As BANA's Objection notes, Ms. Topalian's Motion makes no such showing, and on its merits fails to present any argument about why she is entitled to judgment as a matter of law on her alleged discharge injunction violation claim. While pro se litigants can be given considerable leeway, which the Court certainly has afforded to Ms. Topalian during this proceeding, "pro se status

does not insulate a party from complying with procedural and substantive law." *In re Flynn*, 582 B.R. 25, 31 (1st Cir. BAP 2018) (quoting *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997)). Ms. Topalian fails to satisfy this burden and her Motion must be denied.

    B.    <u>BANA's Motion</u>

Based on the undisputed facts BANA has submitted, its motion for summary judgment is meritorious. It has satisfied its burden and established that there are no genuinely disputed material facts upon which a finding of a discharge injunction violation by BANA can be made. It is uncontroverted that BANA inadvertently and incorrectly applied a payment Ms. Topalian made on her post-petition Visa Account to her charged-off MasterCard Account, and that her liability on that account had been discharged through her 1997 bankruptcy filing. And it is undisputed that upon learning of its mistake, BANA corrected that error within a month by reversing that application and applying the payment to the Visa Account. These undisputed facts do not demonstrate that BANA, through the 2006 Transaction or related subsequent actions, acted "in a way that improperly coerce[d] or harasse[d]" Ms. Topalian in an attempt to obtain payment of a discharged debt. *See In re Best*, 540 B.R. at 9. Nor has Ms. Topalian produced any evidence to establish such prohibited conduct on the part of BANA. Such improper conduct is a requisite element of proving a discharge injunction violation. *See id.* Therefore, Ms. Topalian's discharge injunction violation claim fails as a matter of law.

As a precautionary measure, because of the lack of clarity in the Amended Complaint, BANA also moves for summary judgment to the extent Ms. Topalian is deemed to have asserted any other claims in her Amended Complaint or in any other pleadings. As to any such potential claims, if they exist, Ms. Topalian has not adequately set forth such claims with any particularity, and similarly fails to present any evidence in support of them, including that she has sustained

specific damages as a result. Accordingly, any potential "other claims" also fail as a matter of law.

## VII. Conclusion

Ms. Topalian's motion for summary judgment is denied. BANA's motion for summary judgment is granted, and a separate judgment in favor of BANA shall enter.

Date: May 7, 2018                                    By the Court,

                                                     _____
                                                     Diane Finkle
                                                     U.S. Bankruptcy Judge